CITY OF BOSTON *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 11, 12, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Boston Transit Commission.   East Boston Tunnel.   Boston Elevated Railway Company.   Statute,* Construction.   *Words,* "Entrances."

Under St. 1897, c. 500, § 17, authorizing the Boston Transit Commission to construct a tunnel to East Boston which when completed was to be leased to the Boston Elevated Railway Company, the elevators and their machinery reasonably necessary for transporting passengers between the surface of the ground and the station sixty feet underground beneath the corner of State Street and Atlantic Avenue are entrances to the tunnel to be furnished and paid for by the Boston Transit Commission and are not equipment of the railway required to be installed by the Boston Elevated Railway Company.

CONTRACT by the city of Boston against the Boston Elevated Railway Company to recover $44,450 expended by the plaintiff

through the Boston Transit Commission for the construction of elevators and machinery to be used and operated in the elevator shafts or wells built by that commission at the station under State Street at its intersection with Atlantic Avenue in connection with the tunnel to East Boston constructed under authority of St. 1897, c. 500, § 17. Writ dated October 9, 1907.

In the Superior Court the case was heard by *Fessenden,* J., without a jury. The judge took a view of the premises. The material facts are stated in the opinion.

At the close of the evidence the defendant asked the judge to make, among others, the following rulings:

"4. The question stated in request 1 [as to the obligation of the defendant to repay to the plaintiff the cost of installing the elevators and machinery] is a question to be determined by the court, as such, not by the presiding justice in his capacity as a tribunal to find facts.

"5. The question stated in request 2 [whether the defendant or the Boston Transit Commission was bound to provide the elevators and machinery] is a question of law.

"6. The question stated in request 2 is a question to be determined by the court, as such, not by the presiding justice in his capacity as a tribunal to find facts.

"7. The defendant was under no obligation to furnish or install the elevators or machinery in question.

"8. It was the duty of the Boston Transit Commission to provide the elevators and machinery in question.

"9. According to the true construction of St. 1897, c. 500, if the elevators in question were reasonably necessary for the accommodation of the public in the use of the station as built, it was the duty of the Boston Transit Commission to provide them.

"11. According to the true construction of St. 1897, c. 500, the elevators are a part of the tunnel, its approaches, entrances and stations, constructed as these were.

"12. According to the true construction of St. 1897, c. 500, these elevators are a part of the station.

"13. These elevators constitute a part of the tunnel and the 'stations and connections therefor' within the meaning of St. 1987, c. 500, § 17.

"14. There is no evidence to warrant a finding for the plaintiff.

"15. Upon all the evidence the plaintiff cannot recover.

"16. If the elevators referred to in the agreement annexed. to the declaration were so essential to the convenient use by passengers of the station as built that some party was bound to furnish them, then, according to the true interpretation of St. 1897, c. 500, it was the duty of the Boston Transit Commission to provide them."

The judge refused to make any of these rulings. He made other rulings to the effect, that the question whether the defendant was under an obligation to repay to the plaintiff the cost of installing the elevators and machinery was a question of interpretation of St. 1897, c. 500, and that this was a question of law; that the question whether the defendant or the Boston Transit Commission was bound to provide the elevators and machinery was a question of the interpretation, or construction, of St. 1897, c. 500, combined with the view and agreed facts; and that the agreement upon which the plaintiff sued expressly assumed that the elevators were so essential to the convenient use by passengers of the station that some party was bound to furnish them.

The judge made the following findings of fact:

"1. These elevators were reasonably necessary for the accommodation of the public in the use of the station as built.

"2. The elevators and machinery when operated were, under all the circumstances, reasonably necessary to enable the travelling public using the station to reach the surface of the ground from the platform or *vice versa,* or the elevated station in Atlantic Avenue or *vice versa.*

"3. That the bill sued on is for the elevators and the machinery to run them.

"4. That unless the machinery is actually in operation raising and lowering the elevators they would be of no use.

"5. That on my view I found that the elevators were used almost entirely as a means of communication between the tunnel station and the elevated railway station and very little by passengers going to the station from the street or from the station to the street, but the use of the stairway by either class of passengers was extremely rare.

"6. That the elevators and machinery were not tunnel, station

or approaches but equipment, — a means of conveying passengers from the station to the street and the elevated railway station, and from the elevated railway station and street to the station platform."

The judge found for the plaintiff in the sum of $51,612.52; and the defendant alleged exceptions.

*T. Hunt,* for the defendant.

*J. P. Lyons,* for the plaintiff.

SHELDON, J. The Boston Transit Commission, in accordance with the requirement of St. 1897, c. 500, § 17, constructed a tunnel running from Boston proper to East Boston. That section, so far as now material, reads as follows: "The Boston Transit Commission shall construct a tunnel or tunnels, of sufficient size for two railway tracks, with approaches, entrances, sidings, stations and connections therefor, and for the running of railway cars therein, from a point on or near Hanover Street in the city of Boston, or such other point or points as said board may deem proper for a suitable connection with the subway or subways provided for" in another statute, "to a point at or near Maverick Square in that part of Boston called East Boston, where a suitable connection with surface tracks may be made. Said tunnel or tunnels shall be constructed in a thorough and substantial manner, with special reference to strength, durability and safety for railway travel, and shall be water tight, or in case of leakage the water shall be taken care of by said city." The section then enacts that the tunnel when completed shall be leased to the defendant. Section 18 of the same statute provided for the issue of bonds by the city of Boston, the proceeds of which should be applied to pay "the cost and expenses of constructing" certain other subways "and of the tunnel or tunnels . . . provided for in the preceding section, and the stations, inclines and steps in connection therewith." In the tunnel the Transit Commission constructed a station near the corner of Atlantic Avenue and State Street, and at each end of the station put in a stairway running to the surface of the street. The Commission constructed also at this station elevator shafts or wells, adapted and intended for four large elevators running from the floor of the tunnel not only to the surface of the street, but also to a landing fourteen feet above that surface and connected with a station on the defendant's elevated railway. The commission

built and paid for this station both above and below ground, the elevator wells or shafts, and the stairways which have been mentioned. There was no dispute that it was for the defendant to lay the railway tracks in the tunnel, to install the electrical apparatus necessary for the running of its cars, and generally to provide the equipment for the operation of its railway therein. The commission and the defendant under these circumstances could not agree which party was to provide and install the elevators themselves; and desiring to avoid delay, and assuming that elevators were so essential to the convenient use by passengers of the station that some party was bound to furnish them, they agreed that this should be done by the commission, and that the cost thereof should be repaid by the defendant if it should be found to be liable therefor. This was accordingly done by the commission, at an expense of more than $40,000 and the present action is brought to recover that amount from the defendant. The precise question presented is whether, taking the tunnel and station together, as they actually have been built, these elevators are, within the meaning of the statute which has been quoted, properly a part of the tunnel or of the approaches, entrances, stations and connections therefor which the act requires the commission to provide at the expense of the plaintiff, or whether they are merely equipment of the railway or appurtenances thereof which the defendant must install at its own expense.

A preliminary question is whether, after it has been determined what is the character of the instrumentalities in question, and whether or not the means of access to the tunnel and the station which they afford are reasonably necessary for that purpose, the point is to be determined as an isssue of law or of fact. That question in our opinion is settled in principle by the decision in *Selectmen of Natick* v. *Boston & Albany Railroad*, 210 Mass. 229, 232. As in that case, the question here is as to the meaning of the words used in the statute; and that is a question of law. And in *Browne* v. *Turner*, 174 Mass. 150, 161, the court determined the meaning of the word "connection" in this very statute as a question of law. So in this case, it being settled just what these particular structures or articles of mechanism are, just what purpose they are intended and fitted to serve, and whether or not that use is both designed and adapted and reasonably necessary for the pur-

poses prescribed by the statute, it becomes a pure question of law whether that structure or that piece of mechanism is or is not a part of the tunnel, its approaches or entrances.

The character of this elevator plant, including the cars and the machinery by which they are operated, is not in dispute. That the whole plant is reasonably necessary for the accommodation of the public, to afford access to and departure from the tunnel, was found as a fact. That this finding was fully warranted has not been denied, and indeed is hardly open to dispute. It seems to have been assumed by both parties. It is manifest enough that the stairways at the east and west ends of the station, with their restricted width, their great length, and the small number of their breaks or platforms, do not furnish a convenient means of access to the station, and often might be wholly insufficient for that purpose. It may be doubted whether any stairways could be regarded as adequate approaches or entrances to a tunnel sixty feet underground. But this question need not be discussed; it is concluded by the finding that has been made.

It is, as it must be, undisputed that the stairways are "approaches" or "entrances" within the meaning of those words as used in the statute. It is plain too that when it was seen that the two stairways provided did not furnish sufficient means of entrance, the duty of the Transit Commission was not fulfilled, but it was incumbent upon them to provide further entrances or approaches. If instead of constructing elevator shafts they had chosen to put in moving sidewalks or escalators, these certainly would have been included within the words of the statute. But such moving sidewalks would not have served their purpose, would not have been capable of use in the manner intended and with the convenience to the travelling public which was aimed at, unless with them and as a part of their construction was furnished also the mechanism by which they could be operated. An elevator shaft without a car to run therein and machinery by which to operate it is wholly useless; it is no entrance at all; it becomes an entrance only when suitably fitted up and supplied with the means by which alone it can be made to serve as an entrance. It is only the completed plant that can be used as an entrance; the completed plant therefore must be included in that word.

The object of the whole body of legislation of which the statute

before us is a part was, as was said in *Browne* v. *Turner*, 174 Mass. 150, 162, "to secure rapid transit in Boston and vicinity, and to reduce the congestion in the streets by means of a system of subways and tunnels;" or in other words, as stated in *Mahoney* v. *Boston*, 171 Mass. 427, 429, "to promote the convenience of the inhabitants of Boston, and of the public generally, by furnishing increased accommodations for public travel." This object could not be wholly accomplished in the case of a station like this situated sixty feet underground, with no room available for access by easy slopes, without the use of elevators. The elevator shafts by themselves cannot supply this want; they are incapable of use without cars and machinery. It seems manifest to us that it is the completed elevators that constitute the entrance, the elevators supplied with cars and machinery, capable of affording entrance to the tunnel and serving as an approach thereto.

We do not consider the fact that these elevators reach a point somewhat above the surface of the street, so as to furnish a connection with the defendant's elevated railway station, to be material, as the case has been presented to us. The system now appears to be one integral whole, not divided or attempted to be divided into separate parts with a plane of division at the surface of the street. How this may appear at another trial of the case, we do not know. The shafts or wells were, as they should have been, built by the Commission as a part of the tunnel. The elevators fitted for use are a necessary part of the entrance or means of access thereto. Perhaps the commission might have limited the height of their construction to the surface of the street; but so far as appears they did not choose to do so, and they may have acted wisely in affording ready means of communication and direct entrances and approaches between the tunnel and the elevated railway system. While all this construction was of course for the benefit of the public, it must be remembered that this benefit was to be obtained and the congestion of the streets was to be avoided by providing accommodations for those who were, or had been, or were about to become passengers upon the cars of the street railways. The finding of the judge at the trial, "that the elevators were used almost entirely as a means of communication between the tunnel station and the elevated railway station, and very little by passengers going to the station from the street

or from the station to the street," indicates that the object of the legislation was attained by keeping in this way a greater or smaller number of passengers from the street and avoiding at least one probable source of congestion therein.

It follows from what we have said that the judge at the trial, upon his preliminary findings of fact, should have ruled, as requested by the defendant, that the duty of furnishing and installing the elevators as an entrance to the tunnel and the station therein rested upon the Transit Commission and not upon the defendant, and so that this action could not be maintained upon the evidence put in, and that his sixth finding, at least so far as it applied to the whole of the perpendicular elevator plant or system, was erroneous as matter of law.

*Exceptions sustained.*