BOSTON CONSOLIDATED GAS COMPANY *vs.* DEPARTMENT OF PUBLIC UTILITIES.

SAME *vs.* SAME.

Suffolk.  March 4, 1920. — May 19, 1920.

Present: RUGG, C. J., DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Department of Public Utilities.    Boston Consolidated Gas Company.    Jurisdiction.*

After the board of gas and electric light commissioners, acting under the power conferred upon them by St. 1903, c. 417, § 6, had approved of a contract dated September 27, 1917, relating to the sale of gas to the Boston Consolidated Gas Company by the New England Fuel and Transportation Company and the price

to be paid therefor, one provision of which was that, "upon the termination of the [world] war or the termination of the government's demand for toluol, the question of the price which shall thereafter control this contract shall be resubmitted to the board, and the price thereafter shall be such price as the parties may agree upon, provided it is less than the board shall determine it would then cost the Boston Consolidated Gas Company to make its own gas under the conditions specified in" St. 1903, c. 417, § 6, and has found that a new price agreed upon by the parties on December 11, 1918, after the government's demand for toluol had ceased, was less than the standard fixed in the statute and the contract of September 27, 1917, no further approval by the board of gas and electric light commissioners or their successors under St. 1919, c. 350, § 117, the commissioners of the department of public utilities, is necessary to make the new price effective between the parties to the contract as of the date, December 11, 1918.

Under St. 1903, c. 417, § 6, neither the board of gas and electric light commissioners nor their successors, the commissioners of the department of public utilities, have power or jurisdiction to refuse approval of a contract by the Boston Consolidated Gas Company for the purchase of gas if the price to be paid therefor "is less than it would cost said Boston Consolidated Gas Company to make its gas in gas works of standard type properly equipped, suitably situated and of sufficient capacity to make all the gas required by the whole district supplied by said company."

The board of gas and electric light commissioners, upon a price to be paid by the Boston Consolidated Gas Company to another company for gas being submitted to them for approval under St. 1903, c. 417, § 6, have no power nor jurisdiction to disapprove of the price, if they find it to be "less than it would cost said Boston Consolidated Gas Company to make its gas in gas works of standard type, properly equipped, suitably situated and of sufficient capacity to make all the gas required by the whole district supplied by said company," although they also find that "These companies, owned, controlled and managed by the same interest, for a number of years have had contracts for the purchase of gas, and until very recently they were very profitable to the . . . [other company]. Now in the time of abnormal conditions when the Boston Consolidated Gas Company should profit by the transaction, it is attempted to raise the price beyond what appears to the Board to be fair and reasonable in view of all the conditions surrounding it."

It was *stated*, that it is not to be inferred from the foregoing decision that the department of public utilities, by the approval of a contract or otherwise, may bind itself not to exercise at all times the functions vested in it by Sts. 1903, c. 417, § 6; 1919, c. 350, § 117.

It further was *stated*, that, in making the foregoing decision, no intimation was made as to the scope and effect of the first part of the second sentence of St. 1903, c. 417, § 6, whereby power is conferred upon the board to determine "from time to time . . . the period or periods during which" the Boston Consolidated Gas Company may purchase its gas at these prices.

PETITION, filed in the Supreme Judicial Court on January 29, 1920, for a writ of mandamus directing the commissioners of the Department of Public Utilities to approve an agreement made on

July 21, 1919, between the petitioner and the New England Fuel and Transportation Company, a voluntary association; also a

PETITION, filed in the same court on the same day, for a writ of certiorari, directing the same commissioners to certify the records of the Board of Gas and Electric Light Commissioners, whom under St. 1919, c. 350, § 117, they succeeded, relating to proceedings described in the opinion, to the end that such proceedings might be quashed and other appropriate relief given.

By order of *Crosby, J.,* the two petitions were consolidated for hearing and adjudication, and then were heard by him. The single justice filed the following memorandum and order for judgment:

"The Board of Gas and Electric Light Commissioners having found under St. 1903, c. 417, § 6, that under the contract between the petitioner and the New England Fuel and Transportation Company dated September 27, 1917, as amended by agreement of July 21, 1919, by which the price to be paid for gas under the original contract is increased to 35 cents per thousand cubic feet, is less than it would cost the petitioners to make its gas in gas works of standard type, properly equipped, suitably situated, and of sufficient capacity to make all the gas required by the whole district supplied by said company, it was the legal duty of the Commissioners to approve the change in price and it is now the legal duty of the respondents to approve said change in price, and I so rule. I am of opinion and rule that the Board of Gas and Electric Light Commissioners cannot lawfully refuse to approve the change in price for the reason stated or for any other reason in view of the findings made and above referred to. I also rule that the respondents are bound by the findings so made and that the legal duty is imposed upon them to approve the agreement of July 21, 1919. The result is that the petitioner is entitled to a writ of mandamus, which is to issue."

Other facts shown by the pleadings are described in the opinion.

At the request of the respondent the single justice reported and reserved the petitions for determination by the full court upon the pleadings and his memorandum of rulings of law and order for judgment.

*A. E. Seagrave,* Assistant Attorney General, for the respondent.

*R. H. Holt,* for the petitioner.

RUGG, C. J. The Boston Consolidated Gas Company was incorporated by St. 1903, c. 417. Section 6 of that act is in these words: "Said Boston Consolidated Gas Company shall not purchase any gas until the board of gas and electric light commissioners have found after public hearing that the price to be paid for the gas to be purchased is less than it would cost said Boston Consolidated Gas Company to make its gas in gas works of standard type properly equipped, suitably situated and of sufficient capacity to make all the gas required by the whole district supplied by said company. Said board may from time to time determine the period or periods during which said company may so purchase its gas at the price aforesaid; and no contract for the purchase of gas for more than thirty days shall be made without the approval of said board. No contract which the Boston Consolidated Gas Company shall make for the purchase of any portion of its gas shall in any respect affect any authority conferred on said board by this act or by section thirty-four of chapter one hundred and twenty-one of the Revised Laws or by any general laws which may hereafter be in force to fix the price to be charged by said company for gas."

That company entered into a contract with the New England Fuel and Transportation Company under date of September 27, 1917, for the purchase of gas. The contract was duly approved by the board of gas and electric light commissioners according to the requirements of said § 6 and became operative and binding upon the parties. Paragraph seven of that contract reads as follows: "This contract shall continue until two years after the expiration of the war or until terminated either by the Gas Company or the Fuel Company as hereinafter provided. Either the Gas Company or the Fuel Company may at any time notify, in writing, the other party of its decision to terminate the contract at a period not less than two years from the giving of such notice, and upon the date fixed for such termination this contract shall cease and determine. But upon the termination of the war or the termination of the Government's demand for toluol, the question of the price which shall thereafter control this contract shall be resubmitted to the Board, and the price thereafter shall be such price as the parties may agree upon, provided it is less than the Board shall determine it would then cost the Boston Con-

solidated Gas Company to make its own gas under the conditions specified in Section six of Chapter 417 of the Acts of 1903."

Under date of December 11, 1918, the Boston Company and the New England Company entered into a new contract, the terms of which differed in some important particulars from that of September 27, 1917. One material difference was the price of the gas to be furnished, the earlier contract fixing it at twenty-nine and a half cents per thousand cubic feet, and the new one at thirty-five cents per thousand cubic feet. This proposed contract was presented to the board and was disapproved by a majority of its members. Proceedings respecting that contract were abandoned. Their only pertinency now is that all the board concurred in finding that the price of thirty-five cents per thousand cubic feet "is less than it would cost the Boston Consolidated Gas Company to make its gas in gas works of standard type, properly equipped, suitably situated, and of sufficient capacity to make all the gas required by the whole district supplied by this company," thus following vital words of said § 6, a finding incorporated by reference into the decision under examination in the case at bar.

After the disapproval by the board of the proposed contract dated December 11, 1918, the Boston Company and the New England Company signed a document of the tenor following: "July 21, 1919. Referring to the contract between the undersigned dated September 27, 1917, and particularly to the Seventh Paragraph thereof, it is agreed that commencing with the 15th day of December, 1918, which time is subsequent to the termination of the Government's demand for Toluol, the price of gas furnished in accordance with said contract during the remaining term thereof shall be thirty-five cents (35c) per thousand cubic feet." This also was presented to the board. The matter was considered without another publicly advertised hearing, the board deeming it unnecessary and the parties consenting. After finding that the government's demand for toluol ceased in November, 1918, and referring to its previous finding that that price of thirty-five cents per thousand cubic feet conformed to the conditions set forth in § 6 of the act, the board states in its vote of October 6, 1919: "The company now contends that the Board is limited in its authority to a finding on the question as to whether

or not the price is more or 'less than it would cost the Boston Consolidated Gas Company to make its own gas,' etc., under the conditions specified in the contract, and that the amendment to the contract should therefore be approved; but as stated in the opinion of July 7, the majority of the Board is unwilling to agree to this narrow construction of the clause. The resubmission by the companies of the contract, or of any amendment thereof, to the Board for approval must necessarily give to the Board the right to exercise its discretion as is provided for in said section 6, chapter 417, of the Acts of 1903, by which section the Board is not limited to a determination of the question as to whether the price is more or 'less than it would cost the Boston Consolidated Gas Company to make its own gas,' etc. Nothing contained in said paragraph seven of the agreement of September 27, 1917, can possibly limit the authority of the Board on the question of the approval of a new contract." That vote concluded with the determination, "That the proposed amendment to said contract is hereby disapproved."

There is manifest error in this construction of the duty of the board. No new contract was before the board. The subsisting contract of September 27, 1917, was in force. The board had approved that contract, including paragraph seven, already quoted. That paragraph in express and unmistakable terms provided that the price therein stipulated should, after agreement by the parties, change automatically upon the coincidence of two events; first, either (a) the end of the war, or (b) the termination of the government's demand for toluol, and, second, a determination by the board that the new price agreed upon by the parties was less than it would cost the Boston Company to make its own gas under the conditions specified in said § 6. Upon the concurrent existence of these two conditions precedent the price was, after agreement by the parties, to change according to the terms of the contract already approved by the board and binding upon the parties.

The proposed change in price agreed upon by the parties, pursuant to the terms of paragraph seven of their contract, required presentation to the board under the terms of § 6 of the act, because it affected the price to be paid by the Boston Company for its gas. The function of the board with reference to this proposed

change in price was a limited one.   Under the provisions of § 6 of the act in combination with the contract already approved by the board, and especially in view of paragraph seven thereof, the field of action by the board was confined to ascertainment of the two conditions already pointed out, and did not permit a general survey of factors having no relation to those two conditions.   The question before the board was not the approval of a new contract. All the stipulations of the contract were fixed for a definite and reasonably limited period of time.   If changed conditions rendered necessary a modification of the price to be paid, the board already had decided by the approval of that contract precisely how that change should be ascertained.   The ground upon which a refusal to approve the price was based by the board was (by reference in its vote of October 6, 1919, to its vote of July 7, 1919) that "These companies, owned, controlled and managed by the same interest, for a number of years have had contracts for the purchase of gas, and until very recently they were very profitable to the New England Gas & Coke Company and later its successor, the New England Fuel & Transportation Company.   Now in the time of abnormal conditions when the Boston Consolidated Gas Company should profit by the transaction, it is attempted to raise the price beyond what appears to the Board to be fair and reasonable in view of all the conditions surrounding it."   That ground was wholly irrelevant to the narrow issue presented by the request then before the board.   The previous contracts as to price must have been approved by the board as in conformity to law.   If they had been profitable, it was because of that approval.   The fact of common ownership of the Boston Company and the New England Company was known to the Legislature prior to the incorporation of the petitioner.   Res. 1898, c. 101.   Fifteenth Report of Gas & Electric Light Commissioners, pages 31 to 46; Eighteenth Report ibid., pages 5 to 9.   It may be presumed that § 6 was phrased and included in said c. 417 with that fact in mind by the General Court.

As matter of construction of § 6 of St. 1903, c. 417, such considerations as are set forth in the vote of the majority of the board dated July 7, 1919, are irrelevant to the duty devolved upon the board.   That section does not confer upon the board the right to fix a price for gas which in its opinion is fair and reasonable or

wise or unwise on other grounds. Nor is it given an unqualified power of approval of the price of gas to be purchased by the Boston Company. When the Legislature desired to confer that power upon the board it employed apt and unequivocal words to express that meaning. See, for example, § 4 of said act, where it is provided that the price to be paid by the Boston Company for stocks and physical properties purchased by it, and the amounts at which assets so purchased may be capitalized, are to be fixed by the board. The rule of guidance there laid down was "fair value." It also is provided by § 11 of the act that the price for the sale of gas by the Boston Consolidated Gas Company to any other gas company, or to any city or town, shall be "subject to the approval of the board" without other limitation.

The power conferred upon the Boston Company by the first sentence of § 6 of the act is to purchase gas at a price less than it would cost that company to make its own gas under the conditions therein set forth, as found by the board after a public hearing. The next sentence of the section confers power upon the board to determine from time to time the period or periods during which the Boston Company "may so purchase its gas at the price aforesaid," that is to say, the price agreed upon between the Boston Company and its vendor of gas, which price has been found by the board to be less than the cost price to the Boston Company making gas under the specified conditions. That is the only "price aforesaid" in the section or act. The words following, to the effect that "no contract for the purchase of gas for more than thirty days shall be made without the approval of said board," in this context plainly can only mean that such general power of approval relates alone to the terms of the contract other than the price, because the way in which the price is to be determined already has been particularized by the earlier provisions of the section. That is the clear meaning of the words of the section interpreted according to correct canons of statutory construction. It is confirmed by practical considerations. A public hearing and a decision involving inquiry into the art of gas making and the cost and depreciation and replacement value of extensive gas works would be futile if, after all, the price to be paid for the gas purchased must be approved by the board according to its untrammelled opinion. The public interest is further protected by

the express reservation in the last sentence of § 6 that no contràct of the Boston Company for the purchase of gas should affect the general power of the board to fix the price which it should charge for gas to the consumer.

No inference is to be drawn from the conclusion here reached that the board by the approval of a contract or otherwise may bind itself not to exercise at all times the functions vested in it by the statute.

The scope and effect of the first part of the second sentence of § 6, whereby power is conferred upon the board to determine "from time to time . . . the period or periods during which" the Boston Consolidated Gas Company may purchase its gas at these prices, is not presented on this record and no intimation is made on that point.

The result is that the board already has done all that is necessary to make effective the price of thirty-five cents per thousand cubic feet from December 15, 1918. It has found that on that date the government had ceased to demand toluol and that that price was less than it would cost the Boston Company to make its gas under the conditions specified in § 6 of the act. The determination of the board by fair interpretation under all the circumstances means that the cost ascertained by it was as of December 15, 1918.

It follows that the petitioner needs no relief. The entry in each case may be

*Petition dismissed.*