LEWIS SMITH *vs*. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    November 18, 1927.— January 4, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Negligence,* Elevated railway: subway station approach.  *Boston Elevated Railway Company.  Landlord and Tenant,* Construction of lease.

By reason of provisions of the lease of the Haymarket Square subway station in Boston by the city of Boston, through the transit commission, to the West End Street Railway Company, and the rights and obligations of the lessee to which the Boston Elevated Railway Company succeeded, a sidewalk bordering the street entrance to the station was an approach or appurtenance to it, which the last named corporation was bound to keep in good order and condition at all times; and if a passenger in leaving the station fell over a concrete block of a traffic sign which had been permitted by the Boston Elevated Railway Company to remain on the sidewalk for at least five months, he may maintain an action of tort against that company for personal injuries thus received.

TORT for personal injuries.    Writ dated March 13, 1925.

In the Superior Court, the action was tried before *Hammond*, J.    Material evidence is stated in the opinion.    The judge denied a motion by the defendant that a verdict be ordered in its favor.    There was a verdict for the plaintiff in the sum of $2,600.    The defendant alleged exceptions.

*A. F. Bickford,* for the defendant.

*W. H. Hitchcock,* for the plaintiff.

CROSBY, J. This is an action to recover for personal injuries received by the plaintiff on February 27, 1925, in consequence of falling over an obstruction in the sidewalk surrounding the Haymarket Square subway station in Boston. The case was tried together with another action against the city of Boston to recover for the same injuries.

On the morning of the accident, the plaintiff, who was a passenger on a car of the defendant, came up the stairs from the station platform, on the Union Street side, and went out upon the sidewalk surrounding the station. He turned to the right and walked a few feet when his foot hit a concrete block and he fell and was injured. There was evidence that the block was on the sidewalk at the time of the accident, and had been in the same location for at least five months before the plaintiff was injured; that it was one and a half feet high and was the base of a traffic sign belonging to the city of Boston.

It is agreed that the Haymarket Square subway station was a part of the Tremont Street subway, which was leased to the West End Street Railway Company by the city of Boston by lease dated December 7, 1896; that the Boston Elevated Railway Company succeeded to the rights and obligations of the West End Street Railway Company under the lease; that the lease had been extended to July 1, 1936; that, prior to 1896, Haymarket Square was a public way; that about the year 1896 the subway station was erected by the transit commission as a part of the Tremont Street subway; that before that time there was on the site of the present station an old convenience station which was torn down by the commission when the subway station was constructed. There was evidence from which it could have been found that the sidewalk surrounding the station was built by the transit commission in connection with the station. The lease under which the defendant uses and occupies the station was made by the transit commission on behalf of the city under the authority of certain statutes referred to in the lease.

The lease grants for the term therein stated to the de-

fendant "the entire use and occupation of the subway now constructed or hereafter to be constructed by the Commission under the authority of the aforesaid acts the same to be used however only for locations of the railway tracks of the party of the second part [the defendant] for the operation of its railway and for the purposes hereinafter expressly enumerated . . . ."

The lease describes and defines the subway in the following terms: "The word subway as used above and wherever used in this instrument shall include all the subway subways tunnels entrances approaches connections sidings stations and appurtenant structures and fixtures of every kind which the Commission has constructed or hereafter may construct under the authority of the aforesaid acts and wherever in this instrument a portion of the subway is referred to there shall be meant a continuous and connected portion of the subway as above defined unless a different signification is apparent."

The lease also recites that "The party of the first part shall not be responsible to the party of the second part for damages of any description resulting from any defects in the subway . . . nor shall it be responsible for any damages resulting to persons or property in the operation and use of the subway including all parts thereof whether on property belonging to the party of the first part or upon property the fee of which belongs to other parties . . . ." The lease also expressly provides that "The party of the second part shall keep the subway thoroughly clean and in good order and condition at all times except as herein excepted shall by use of pumps keep the same free from unnecessary dampness and shall by artificial ventilation when needed keep the air therein pure and shall keep the stations and their approaches free from ice and snow all which service shall be performed to the satisfaction of the Commission."

There was evidence from which the jury could have found that the plaintiff at the time he was injured was in the exercise of due care, and there was evidence warranting a finding of negligence on the part of the person or corporation in control of the sidewalk. We assume that the defendant does not contend to the contrary in view of the statement in its

brief that "The sole issue raised by the defendant resolves into a question of whether or not this sidewalk was included in the lease between the Transit Commission and the West End Street Railway Company."

The provision in the lease that "the entire use and occupation of the subway" were granted to the West End Street Railway Company whose rights and obligations the defendant assumed, together with the definition of the subway which included the "entrances approaches . . . stations and appurtenant structures and fixtures of every kind which the Commission has constructed or hereafter may construct," and the provision that "The party of the second part shall keep the subway thoroughly clean and in good order and condition at all times except as herein excepted . . . and shall keep the stations and their approaches free from ice and snow . . . ," plainly show that the sidewalk could have been found to be an approach or appurtenance to the station, if it is not to be so held as matter of law.

In *Boston* v. *Boston Elevated Railway*, 213 Mass. 407, where a somewhat similar lease was construed, it was held that elevators and machinery, reasonably necessary for transporting passengers between the surface of the ground and the station, were "entrances" or "approaches" within the meaning of those words as used in the statute. It does not follow, however, as the defendant argues, that the words "entrances" and "approaches" apply only to instrumentalities within the subway. The court in that case was dealing only with instrumentalities below the ground, but it was not decided nor can it properly be inferred that parts of the subway upon the surface of the ground cannot also be construed to be entrances or approaches thereto.

The uncontradicted evidence was to the effect that the defendant recognized its control over the sidewalk under the lease, as it had assumed the duty of removing snow and ice upon it and of keeping it clean in summer. The defendant's inspector Conners testified that his territory included the Haymarket Square subway station, and that had he seen the traffic block on the sidewalk it would have been his duty to remove it. No question is raised as to the authority of

the transit commission to construct this subway where located and to use public ways and public lands for that purpose under St. 1894, c. 548, nor is it contended by the defendant that the commission did not have power to lease the subway in question under the above statute and subsequent enactments of the Legislature.   See St. 1893, c. 478, § 7; St. 1894, c. 548, § 35; St. 1895, c. 440, § 6; St. 1896, c. 492.

As the evidence justified a finding that the sidewalk was in the control of the defendant, and as the questions of due care of the plaintiff and of negligence of the defendant were for the jury, a verdict for the defendant could not rightly have been directed.   *Wixon* v. *Bruce,* 187 Mass. 232.   *Cerchione* v. *Hunnewell,* 215 Mass. 588–590.   See also *Kirby* v. *Boylston Market Association,* 14 Gray, 249; *Leonard* v. *Storer,* 115 Mass. 86; *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47; *McCarthy* v. *Thompson Square Theatre Co.* 254 Mass. 373.

*Exceptions overruled.*